UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP MCCRARY,

    Petitioner,

v.

    CASE NO. 2:09-CV-14666
    HONORABLE MARIANNE O. BATTANI
    UNITED STATES DISTRICT JUDGE

GREG MCQUIGGAN,

    Respondent.
_____/

## OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Philip McCrary, ("Petitioner"), confined at the Kinross Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his Wayne Circuit Court convictions of two counts of attempted first-degree criminal sexual conduct ("CSC"), MICH. COMP. LAWS 750.520b(1)(a), and one count of second-degree criminal sexual conduct. MICH. COMP. LAWS 750.520c(1)(a). Petitioner was sentenced to two concurrent 1-to-5 year terms for the attempted first-degree CSC convictions, and a concurrent term of 10-to-30 years for the second-degree CSC conviction. For the reasons stated below, the application for writ of habeas corpus is **DENIED**.

### I. Background

At Petitioner's bench trial, Kelli King testified that Petitioner was the father of her two-year-old child, Kainaya. Ms. King also had three other children unrelated to Petitioner, including a twelve-year-old daughter, Keilana.

1

Petitioner came to Ms. King's apartment on the night of December 22, 2006, and informed Ms. King that he had Christmas gifts for her children. Petitioner never produced the gifts, and at 8:00-9:00 p.m., Ms. King went to sleep. She woke up around 2:00-3:00 a.m. and found Petitioner asleep in the basement with their daughter, Kainaya. She woke him up and asked him why he was still there, and Petitioner answered that he wanted to spend time with his daughter.

At around 4:30 a.m. Ms. King noticed money was missing from her purse. She went downstairs and started yelling at Petitioner and threw him out of the house. After Petitioner left, Keilana told Ms. King that Petitioner had raped her. Ms. King contacted an aunt to take them to Children's Hospital.

Keilana Jackson testified that Petitioner raped her at 1:29 a.m. She knew the exact time because she could see the time illuminated on the cable box. Keilana had been sleeping on the couch in the livingroom when she was awakened by Petitioner. His hands were underneath her clothes rubbing her chest. Her eleven-year-old sister and five-year-old brother were sleeping on the other couch in the same room.

Keilana did not shout because she was scared. Petitioner told her that he would teach her things she could use in the future. He started to lick her chest. He then sat her up straight and tried to remove her blue jeans and underwear. She was crying and tried to stop him, but her pants came down almost to her ankles.

He stuck his finger inside her "vagina area." He then put his "private part" inside her and moved in and out. She was eventually able to push him away and he left. Throughout the incident, Keilana never screamed or tried to wake her brother or sisters. Petitioner told

2

her not to tell anybody, especially her mother.

After Petitioner left, her little brother came over and was crying and Keilana consoled him. She did not tell her brother to get their mother. Keilana went back to sleep. She was awakened by her mother yelling at Petitioner. After her mother kicked Petitioner out of the house, she told her about the incident.

Keilana was examined by Doctor Susan Kunjummen at Children's Hospital. Dr. Kunjummen did not note anything about Keilana's emotional demeanor. Keilana told the doctor what had happened. Keilana did not mention any licking of any part of her body. She did not report her brother sleeping in the same room, nor any use of Petitioner's finger. She observed secretions on Keilana's genitalia, but could not identify nor draw any conclusions from them. She did not see any bruises, abrasions or tears of the hymenial area. But the doctor testified that her examination was consistent with the history reported by Keilana.

A Detroit Police Officer spoke to Keilana and her mother at Children's Hospital on December 23, 2006. Keilana told the officer what had happened. Ms. King was seated next to Keilana throughout the conversation. Keilana told the officer that Petitioner pulled off her pants and put his penis in her vagina. She said the assault lasted between twenty and thirty minutes.

The Detroit Police Department's crime lab received the rape kit and examined the series of vaginal swabs, pubic hairs, oral smears and rectal swabs. No semen was detected and no further testing was performed on the samples.

The trial court, acting as finder of fact, found Petitioner guilty of two counts of

attempted first-degree CSC, in relation to the attempted penetrations with his finger and penis. The court also found Petitioner guilty of one count of second-degree CSC for licking and fondling her breasts.

Petitioner appealed his conviction to the Michigan Court of Appeals. His appellate brief raised the following claim:

> I. The competent evidence was not sufficient to overcome the presumption of innocence and prove the element of sexual contact.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. McCrary, 2008 Mich. App. LEXIS 2163 (Mich. Ct. App. Nov. 13, 2008). Petitioner subsequently filed an application for leave to appeal, which raised the same claim. The Michigan Supreme Court denied the application in a standard order. People v. McCrary, 762 N.W.2d 490 (Mich. 2009).

Petitioner now seeks a writ of habeas corpus based on the same claim he raised in the state courts.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or

5

theories supported or. . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. "[I]f this standard is difficult to meet, that is because it was meant to be." Richter, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Finally, in Cullen v. Pinholster, 131 S.Ct.1388, 1398, 179 L. Ed. 2d 557 (2011), the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."

### III. Discussion

Petitioner's sole claim is that the evidence presented at his trial was insufficient to support the jury's verdict. Specifically, he points to several factors that undermine the

credibility of the victim's testimony: (1) the twelve-year-old victim must have been coached because she used mature language in describing the incident but did not know the meaning of the word "transpired", (2) the victim testified that Petitioner forcibly removed her pants as she cried, but her siblings did not wake up, (3) she went back to sleep after the incident, (4) the medical examination failed to reveal any evidence of a sexual assault, (4) she failed to tell Dr. Kunjummen about Petitioner licking her chest and using his finger to penetrate her, and (5) her mother had a motive to fabricate the charges.

The Michigan Court of Appeals rejected this claim on the merits. Review of the state court's determination is therefore doubly-deferential. First, as in all sufficiency-of-the-evidence challenges, the Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This must be done without reweighing the evidence, re-evaluating the credibility of witnesses, or substituting the Court's judgment for that of the fact-finder. Id; see also Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review"). Even if the reviewing Court might not have voted to convict, it "must uphold the . . . verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." Id.

Second, even if a Court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, on habeas review, it must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. Brown,

7

567 F.3d at 205. A habeas court may not grant the writ unless the state court's decision was "objectively unreasonable," or, in other words, no "fair minded jurists" could resolve the case in the way the state court did. See Richter, 131 S. Ct. at 786.

The Court finds that Petitioner's claim does not survive the first level of deferential review. Viewing the evidence most favorably to the prosecution, a rational fact-finder could find beyond a reasonable doubt that Petitioner was guilty of two counts of attempted first-degree CSC, and one count of second-degree CSC. There is no merit to Petitioner's assertion that the victim was coached. Her testimony was appropriate for a precocious twelve-year old girl nervous to testify at trial. She explained that she knew the assault took place precisely at 1:29 a.m., because that was the time displayed on the near-by cable box. And it is not unusual for a pre-teen to be aware of some mature words such as "siblings" and "rape," but retain gaps in vocabulary and be unfamiliar with a word such as "transpire." The manner of the victim's testimony did not render it incredible.

Next, viewed as required by the *Jackson* standard, the fact that the victim did not raise the alarm did not undermine her credibility to the point that her testimony was insufficient to sustain the verdict. Far from it. The victim explained that she was scared and was afraid that Petitioner would hurt her if she cried-out. Instead of crying-out, she resisted by attempting to hold her legs straight, cover herself with a blanket, and push Petitioner away. The victim did not passively allow Petitioner to rape her. Nor does it follow that because the victim testified that she was crying and that Petitioner used force to remove her pants, that her siblings would necessarily have awoken. In fact, it appears that the victim's brother may have been stirred. The victim testified that after Petitioner left

8

the room, her five-year-old brother came to her crying and asking where his mother was.

Nor did the testimony of the doctor who examined the victim undermine her credibility. Petitioner was found guilty of <u>attempted</u> first-degree CSC, meaning that the trial court found that he tried but was unable to penetrate the victim with his penis. This was consistent with the victim's description of the incident, and perhaps more importantly, the doctor specifically testified that her examination was not inconsistent with the victim's statement to her. The fact that the victim did not specifically mention Petitioner licking her breasts to the doctor is mitigated by the fact that she told the doctor that Petitioner "messed" with her breasts.

Petitioner finally asserts that Ms. King had a motive to fabricate charges against Petitioner because she suspected him of stealing money from her purse. But Petitioner does not explain how that motivation extended to the victim, who testified that prior to the assault she had no problem with Petitioner and thought of him as a good man.

Accordingly, none of Petitioner's arguments adequately undermine the victim's credibility to raise a serious challenge to the constitutional sufficiency of the evidence supporting his convictions. And because his claim fails under de novo review, the state court adjudication of his claim was not contrary to the Supreme Court standard, nor did it involve an unreasonable application of facts or law.

## IV. <u>Conclusion</u>

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C.

§ 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. Castro v. United States, 310 F. 3d 900, 901 (6th Cir. 2002). The Court denies Petitioner a Certificate of Appealability because he failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable, or that he should receive encouragement to proceed further. Siebert v. Jackson, 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

**V.      ORDER**

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**


    s/Marianne O. Battani
**HONORABLE MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE**

**Dated:** September 23, 2011

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner via ordinary U.S. Mail and Counsel for the Respondent, electronically.

                                              s/Bernadette M. Thebolt
                                              Case Manager